Ladies and gentlemen, this morning's calendar is part of an experimental program that the court is conducting in order to determine the best way of handling the thousands of immigration filings that we are receiving this year. And so we appreciate counsel's willingness to be here. We have, as you know, many more cases calendared for argument than we ordinarily hear in regular calendars. We have reviewed the materials. We will, however, be very interested in the arguments that are presented because they will further enlighten us. And we appreciate all of you being here this morning. We will proceed to hear the cases in the order that they are listed. I think the day sheets have some mistakes in them. So I believe that the first case for argument is, is it Negret-Duran v. INS? Is that how you pronounce it? Negret-Duran. Negret-Duran, all right. Thank you. You may proceed. May it please the Court, my name is Jesse Lloyd for Petitioner Santiago Negret-Duran. At the outset, I would like to request a two-minute rebuttal period. The BIA has a duty to carefully review all of the evidence submitted to it and the entire record before it. The BIA has failed twice to discharge this duty properly as applied to Mr. Duran's case. Accordingly, we are here for two petitions for review. As your honors will recall, the first petition for review deals with the direct appeal to the BIA from the immigration court hearing. At that hearing, Mr. Duran explained that he suffers from a serious eye condition which has twice required surgery, which at the time of the hearing still bothered him, and he was unsure at that point if he was going to require further surgery. Upon review of the evidence, the immigration judge denied his claim, but pointed out that the eye problem was really her only real concern, but noted that the surgery which he had received would be unavailable in Mexico. However — I didn't see that anywhere in the record. Surgery is unavailable anywhere in Mexico. Well, she — I apologize, your honor. I should rephrase. She indicated that it was covered through medical insurance, and based on her understanding of the medical insurance system within Mexico, that such an operation would be — would be unavailable to him in Mexico. He would not — if he were in Mexico without such insurance, without the resources available to him in the United States, he would not be able to receive those surgeries. In other words, he wouldn't have his medical insurance once he were sent to Mexico, right? That's what it amounts to. Correct. And she also said that these surgeries would be — would not be available to him, clearly indicating that the resources he would have in Mexico would not permit him to have such a surgery, were he to — It's to the nub of this case, you know, and that's — in other words, I think your claim really is that that amounts to extreme hardship, isn't it? Well — Because — because if it does, then we have no jurisdiction to review it. Well — Because we cannot review the determination of lack of extreme hardship, right? Our position actually is one step removed from that. Our position is that the government — that the BIA's reading of the record, which indicates that the condition had been successfully treated, is so clearly not evident in the record, is for — that a careful reading, which is due process rights require of the record, forecloses such a conclusion. As a result — I don't understand that. What is it that we can review? Well, Your Honor, the court retains jurisdiction to review for due process violations in the proceedings below. Mm-hmm. Our position is not merely that the BIA's decision is ultimately incorrect, but rather that it is based upon a reading which cannot be the result of a careful, thorough reading of the record. Absent a careful, thorough reading of the record, there has been a due process violation. Accordingly, the court retains jurisdiction to review that, indicate there has been a due process violation. And we're not asking — We're not asking for help that — that a discretionary determination based on an inadequate review of the record is — Certainly. Cited in the briefs within the Loretta Martinez case, Your Honor, explains — in that case, actually, the court denied their claim. But in that case, the petitioner had explained and had argued that essentially the BIA in that case did not review the record thoroughly, did not review it adequately. The court determined in that case there was a presumption that the BIA did review it adequately. Accordingly, they were not in a position to determine that a due process violation had occurred as such because they could not directly review the hardship violation — or, excuse me, the hardship determination. Then there was no — they lacked jurisdiction. In this case, the presumption is clearly rebutted by the BIA's own statements, which are so clearly off the mark, so clearly not reflected by the evidence that's actually presented in the record. You say the BIA's own statement. What statement are you referring to? The BIA states that Mr. Duran's condition had been successfully treated. Mr. Duran himself testified that the condition still bothered him, and it was unclear whether or not he was going to require further surgery. There is no indication at any point in the record that the condition was still treated — or, excuse me, was successfully treated. Accordingly, such a conclusion cannot be based upon a thorough review of the record or a constitutionally sufficient reading of the record. Well, successfully treated can really be read as meaning only that the operation was successful, right, which it was. Well, it indicates it has been successfully treated. If it has been successfully treated, it would no longer be a concern. It would no longer be something which is a problem. Our reading, the use of the past perfect tense, indicates that there is no further treatment required. So if we read it the way you read it, you're saying that, we'll call it a mistake or error, is sufficient to rise to the level of a due process violation? Yes, it is, Your Honor. That's your case. Well, if it's statutorily nonreviewable, how do we get to this point where we bring in a due process exception to the nonreviewable? Well, Your Honor, and again, I'd refer the Court to its decision in Lottery to Martinez. It's an issue, while the Court may not be able to statutorily review simply the decision itself or the hardship determination in and of itself, it can review the due process which is used in arriving at that decision. The Court can determine whether or not a constitutionally sufficient process has been given to Mr. Duran in reaching that ultimate conclusion. Notably, we're not asking the Court to overturn the hardship determination, but rather return this to the BIA for further review. Okay. I think we should hear from the government. Thank you. You have time for rebuttal. May I present? Thank you, Your Honor. May it please the Court, my name is Jennifer Lightbody on behalf of the respondent. The Court should dismiss both of Ms. Duran's claims in the case of the review because he's seeking to challenge a discretionary no extreme hardship determination, and the Court lacks jurisdiction to review these challenges. Though he couches them in terms of due process, there is no due process violation here, and he is essentially challenging an extreme hardship determination. Well, first of all, as a matter of principle, you agree that we can review a due process violation, a review to determine whether or not there's a due process violation. Do you agree with that proposition? No, Your Honor, because there is no, as this Court has held, that relief like suspension of deportation is a privilege granted by Congress, and it's not a right. So the denial of such relief cannot rise to the level of substantive due process. Well, what do you make of this Loretta Martinez case? Well, Your Honor, I'm not sure I understand the specific question that you're asking me. Doesn't Loretta Martinez, as Mr. Lloyd said, hold that this Court does have jurisdiction to review a due process claim made in a removal proceeding? The Court would have jurisdiction. It would have jurisdiction. It would review it under de novo standard of review constitutional challenges. Well, and that's a challenge he says he's making. But actually his claim is just couched in terms of due process. He doesn't actually have a term. So that's the question we have to determine. I mean, is this a ñ maybe it's a line-drawing case. Is this a due process case or is this merely a review of the, you know, substantial evidence type of case, right? It's actually ñ Somewhere along there there's got to be a line. I think at some point it does rise to the level of a due process violation. In this case it doesn't, Your Honor. His challenge ñ Well, I'm not talking about ñ I'm just talking about trying to discern the principle now. What's the principle by which we determine whether this case does or does not constitute a proper due process challenge? I think by looking at the specific facts in this case and what the board did and didn't do. And in this case ñ That's almost the same as a review of the record for substantial evidence, isn't it, which we cannot do, you say. Right. I mean, he's couching it in terms of due process, but it's really a challenge to the extreme hardship determination. In other words, what he's saying ñ and just because he says it's a due process challenge doesn't make it so. And so I think the court can ñ So that's my question. You know, what is the principle we apply in order to try to discern whether or not it is a due process challenge? Well, I think that the court can certainly look at his ñ the challenges that he makes and determine whether that is, in fact, a due process challenge. But it's the government's position that it's not. So ñ but if you're asking me if it's a ñ You're writing our decision here. What would you tell us to say that is ñ that precludes us from ñ That the petitioner has not raised a colorable due process argument in this case and that what he is doing is seeking to challenge a discretionary decision of no extreme hardship, because he hasn't shown that the board did not review the record. And, in fact, the record shows that the court did review the entire record in this case. He says that the board made an erroneous statement that his eye condition had been successfully treated, and that wasn't in the record. And, in fact, it was in the record, and it came through petitioner's direct testimony. At page 138 of the record, the petitioner was asked, were those operations successful in correcting the eye problem you had? Answer, yes, the surgery helped me a lot. And the only place that the board could have found that answer is by reading the transcript and by reading the petitioner's direct testimony. So if this court were to find in favor of the petitioner that the board did not review the entire record, the board would have to conclude ñ or this court, rather, would have to conclude that, on page 138 of the transcript, that the board read lines 10 through 12, which is his testimony about successful treatment of the eye condition, but that the board skipped over lines 1 through 9 and skipped over line 13 through 24. I mean, that's essentially his argument, that the board, rather, focused on essentially three lines in the testimony and ignored the information before that and after that, because the board didn't specifically say that his eyes are irritated and red and that they bother him. So you agree that we have jurisdiction to consider whether the board reviewed the record? The government's position is that he has ñ that he is essentially challenging an extreme hardship determination, that his claim of due process is not supported by the record. And so our first position is that, no, this is a challenge to extreme hardship. The court has no jurisdiction to review it. But if the court finds that he has raised a colorable claim of due process, the court would review that de novo. And in this case, there's absolutely no evidence to support his position. Well, we have to ñ you agree that we have to review the record at least to the extent of determining whether or not he raises what you would call a legitimate due process challenge or it's really just sort of a disguised substantial evidence challenge, right? To that extent, we have to review the record. Well ñ No, it's to determine, you know, whether we can reach the ñ reach the merits. Well, the government's position is that he is simply challenging an extreme hardship determination. I know that, but in order to determine whether or not we agree with you, we have to review the record to a certain extent, right? To a certain extent, yes. And it's the government's position with respect to a second petition for review that the court lacks jurisdiction over that because he is, again, challenging an extreme hardship determination. That was the board of the basis ñ the basis of the board's decision to deny the motion to reopen because he failed to show extreme hardship. And the court's decisions in Arizal and Rodriguez-Larez do not ñ do not reach the threshold jurisdictional issue in this case. In both of those cases, as in the Samardi case, those involved the denial of a motion to reopen to apply for discretionary relief. In this case, the petitioner was allowed to apply for discretionary relief, suspension of deportation, and it was denied because he failed to show extreme hardship. So those ñ if this court were to allow the petitioner or to find jurisdiction on the denial of the motion to reopen, it essentially would allow the petitioner to circumvent the decision in K-law, which the court held it doesn't have jurisdiction over discretionary issues such as extreme hardship. So the petitioner can't simply circumvent K-law by filing a motion to reopen. It's circumventing the statute as well, isn't it? Yes, it is, Your Honor. Okay. I think we understand, Governor. Okay. And for those reasons, we would ask that the court dismiss the petition for review. Thank you. Thank you. Thank you, Your Honors. At this point, I'd like to briefly address the second petition for review, especially the jurisdictional matter. Rodriguez-Larres and Arrizal both explained that when analyzing the jurisdictional powers of this court in regards to a motion to reopen, one looks at the underlying deportation. If the deportation order is one which is not based on one of the grounds for which there's no jurisdiction, usually criminal grounds, then this court has jurisdiction. Mr. Duran's underlying deportation order is based on his entry without inspection. There is no bar to reviews of deportation orders entered based on entry without inspection. These are the factors which are focused on in Arrizal and Rodriguez-Larres. Accordingly, this court does, in fact, entertain jurisdiction to review. It's not stated in the report that it was deportable. So it comes down to extreme hardship again. Well, Your Honor, it comes down to the discretion the BIA exercised in determining whether or not the evidence submitted is material. If you come in here with a petition saying he was denied an opportunity to testify, he was denied an opportunity to bring a witness to back up his testimony, he was denied a hearing, he was denied a hearing before a competent officer, something like that, then we'd have a due process question. But what – I still can't understand what denial of due process occurred here other than that the I.J. didn't read the testimony the way you wanted him to read it. Well, again, and this would be in relation to the first petition for review rather than the second. The first petition for review, our evidence is simply this, that the BIA's decision is so clearly off base, so clearly unsupported by the facts, by the record, that it demonstrates the BIA did not carefully consider the claim. Okay. And that's all we are saying. Okay. It's so bad that it couldn't have considered it. Okay. Absolutely, Your Honor. Thank you. Thank you. Your time has just about expired. I think we understand your point. Thank you. The case just argued is submitted for decision. The next case – well, I'm not quite sure what the real name is, but it's something Flores has submitted on the briefs. We'll hear the next case.
judges: Schroeder, Goodwin, Tashima